JAMES JACKSON *ex dem.* ROBERT GRIGNON, PETER B. GRIGNON, and MORGAN L. MARTIN VS. JOHN JACOB ASTOR, RAMSEY CROOKS, ROBERT STUART, and LINUS THOMPSON.

Finney.
1p 137
78 549
Finney,
1p 137
94 457
1p 137
111 5133

1. CONCLUSIVE EFFECT OF JUDGMENTS.—The judgment of a court of competent jurisdiction is conclusive upon all the world, and until such judgment shall be reversed by the proper superior tribunal, cannot be questioned or impeached in any collateral issue.

2. ADMINISTRATOR'S SALE : LICENSE, ETC.—Under the laws of the Territory of Michigan, an order of the county court, and a license issued under such order, empowering the administrator to sell the real estate of the intestate for the payment of debts, is conclusive upon the subject; and the presumption of law is, that the court had all the necessary evidence before it to authorize such order and license; and the heirs at law of the intestate cannot, in a collateral suit, contest the validity of the order and license, for the purpose of setting aside a sale and conveyance made by the administrator under such order and license, on the ground of mere error, or that the court exercised its jurisdiction irregularly or improvidently. The presumption is that every necessary step was taken to give the court jurisdiction.

3. SAME.— Such an order of the county court is valid and effectual, although it authorizes the administrator to sell the real estate of the intestate, in general terms, without specifying what part, or describing the lands to be sold.

4. SAME.— The administrator, under such authority, must advertise and sell the lands according to the directions of the statute ; and whether he did so or not, is a question of fact to be left to the jury; and in an action between the heirs at law and the grantee of the administrator, proof of a *substantial* compliance with the requisitions of the statute will be sufficient.

5. RECORD AND MINUTES OF COURT.— The *minutes* of the county court as it existed under the laws of Michigan, signed by the clerk, are to be received and considered as the record of the acts and decisions of the court, although there may be no complete record of the case formally made up as required by the statute.

6. SAME.— The minutes and records of the county court which were deposited with the clerk of the district court of the county upon the organization of the Territory of Wisconsin, and the abolition of the county courts, as the minutes and records of the county court, are to be received and considered as legal evidence of the orders and decisions of the county court, which they purport to contain.

7. CONFIRMATION OF PRIVATE LAND CLAIM.—An act of congress confirming a private land claim vests in the donee such an interest in the land as

may, under the proper order of court, be sold by his administrator for the payment of his just debts before any patent issues for the land.

8. SAME.— An order of the county court empowering the administrator in general terms to *dispose of the real estate* of the intestate, is sufficient to authorize the administrator to sell and convey a particular tract of land confirmed to the intestate by congress, but for which a patent had not issued.

9. EFFECT OF PATENT.— A patent for the land confirmed, which issued to the donee and his heirs subsequent to the sale and conveyance by the administrator, does not vest the legal title in the heirs at law of the intestate so as to enable them to maintain an action of ejectment, but inures to the benefit of the grantee of the administrator.

ERROR to the District Court for *Brown* County.

Ejectment for the recovery of certain real estate. *Robert Grignon* and *Peter B. Grignon,* two of the lessors of the plaintiff, claimed the land as sons and heirs at law of *Pierre Grignon,* deceased, to whom a tract of land, including the disputed premises, was confirmed by act of congress, and for which a patent issued several years after his death, and after the sale of the land by his administrator. *Morgan L. Martin,* the other lessor of the plaintiff, claimed jointly with them, by virtue of a deed from said *Robert* and *Peter,* conveying to him an undivided interest in the same premises.

To establish the heirship of *Robert* and *Peter B. Grignon,* Augustin Grignon was sworn on the part of the plaintiff, and testified that he was acquainted with *Pierre Grignon,* deceased, who was his elder brother: That he was one-eighth Indian and the balance French, his mother being one-fourth Indian; that he was married in the year 1802; *Robert,* one of the lessors of the plaintiff, is his eldest son, and was born in the year 1803; *Peter B.,* another of the lessors of the plaintiff, is his son and was born in the year 1805 or 1806; *Pierre Grignon,* deceased, and his wife lived together as husband and wife when they had these children; *Pierre* was an Indian trader and had farms at Green Bay; he kept house and had his family together; he had these two children by his said wife, and he called her his wife and she was

known and considered his wife and had the charge of his house as his wife; they slept and lived together as husband and wife for at least nine years; she visited among his relations as his wife and was received and treated by them as such; he brought up and educated his said children, he instructed them himself a part of the time, and sent the youngest to school; he had charge of them until he died; the mother died after the war; he died before his wife, in 1822 or 1823; he always supported her; I have heard him speak of his said children as his heirs who would inherit his property.

On cross-examination, he testified that *Pierre* told him if there was any estate left after paying his debts, his sons would inherit it, and that it was his intention to have his children educated. At the time this woman lived with him he had no other wife, but after they separated he had another. The name of the mother of said children was *Pa-mon-e-cote.* She was a Menomonee Indian. I was present in the country when he took his wife above named. I was not present at the ceremony of their marriage, but was in the country, and she continued to live with him, and her father and mother called *Pierre* their son-in-law. In the year 1802 there were no laws in force in this country. The marriages that took place at that time were according to the Indian laws and customs. There were no priests nor magistrates in the country.

The Indians had their villages here (Green Bay) and planted their corn here, and in the fall after harvesting their corn went into the country to hunt, and returned in the spring of the year. I had no knowledge of the settlement here being then known and called the "White Settlement at Green Bay," I supposed at that time the land belonged to the Indians. If any person came here and wanted land to cultivate, he applied to the Indian chiefs for leave to do so. In answer to a question as to what was the marriage ceremony at that place in 1802, and by whom it was performed, he answered that there

were some white people there at that time, and when a white man took a woman to wife, they were married before witnesses; when a white person took a squaw to wife they were married according to the Indian custom, which was as follows: The man went and spoke to her; if she consented, she either told him to apply to her parents for consent, or she did so herself. In case consent was given by the parents, presents were made by the son-in-law to the parents and then they would give him the girl and bring her to his house and leave her there, and he would afterward assist in supporting the parents. Similar testimony was given by other witnesses, one of whom stated that "it was the custom when parties were thus married to live together as long as they could agree." A patent from the United States to *Pierre Grignon* and his heirs was then put in evidence. This patent was issued after his death, and the circumstances under which it was issued are stated in the opinion of the court.

The defendants claimed title to the premises in dispute by virtue of a sale and conveyance from Paul Grignon, as administrator of the estate of *Pierre Grignon*, deceased, under an order of the county court for Brown county, and a license issued under said order, made in 1826, to Augustin Grignon, from whom the defendants derive their title.

In support of their title the defendants proved by the records of the probate court for Brown county, that letters of administration were granted on the estate of *Pierre Grignon*, deceased, to Paul Grignon, on the 21st day of June, 1824, and they gave in evidence the bond of such administrator which had been approved and filed by the probate judge. The defendants offered in evidence an extract from a book purporting to be the minutes of the proceedings in the county court for Brown county, which is set out at length in the opinion of the court. This was objected to by the plaintiff, upon the ground that it did not appear that there was any petition pre-

sented to the court, nor any certificate of the judge of probate certifying as to the value of the property and the necessity of the sale, nor was there any thing to show any reasons why the court should order a sale of the real estate of the intestate as prescribed in the statute, and that no notice was given to the parties concerned to show cause, according to the statute, nor did the order specify what lands were to be sold. These objections were over-ruled. The defendants then gave in evidence a bond and oath of said administrator to make sale of the real estate of the deceased intestate, according to the statute, dated and filed April 20, 1826. Considerable evidence was then given to show that notice of such sale was given as required by law. The notice was published in "The Michigan Herald," printed at Detroit, for seven successive weeks, and the evidence showed that five written copies of the notice were posted in the township where the real estate was situated ; that there was at that time but one township in Brown county, and there were then but two counties in what constituted, in 1839, Wisconsin Territory. The defendants then offered in evidence a deed from Paul Grignon, as administrator of the estate of *Pierre Grignon*, deceased, to Augustin Grignon for the premises in dispute, dated June 13, 1826, and, in connection therewith, a license issued by the clerk of the county court, for Brown county, under the seal of said court to Paul Grignon, administrator of Pierre Grignon, deceased, for the sale of said lands, dated March 28, 1826, as follows :

" TERRITORY OF MICHIGAN, } *ss :*
    County of Brown.              }

·" To Paul Grignon, administrator of *Pierre Grignon,* deceased :

[SEAL.] " Be it known to all whom it may concern that at a term of the county court of the county of Brown, continued and held at the township of Green Bay, in said county, on Tuesday, the 10th day of January, in the year of our Lord 1826, before the Hon. JAMES PORLIER, Chief

Justice, and JOHN LAWE, Associate Justice.   Paul Grignon, administrator of all and singular the goods and chattels, rights and credits, lands and tenements of *Pierre Grignon*, deceased, late of the county of Brown aforesaid, represents to this court, then and there in session, that the said *Pierre* died intestate, at Green Bay, in said county of Brown, on the 4th day of March, 1828 ; that at the time of his death the said *Pierre* was seized in his demesne as of fee in and to the following tracts and lots of land, situated at Green Bay aforesaid, to wit (describing the lands in dispute and other lands) ; and that it has been ascertained by the petitioner that the goods and chattels belonging to the estate of the said deceased are insufficient to pay all the just debts which he owed at the time of his death, but that the estate will be insolvent, and therefore prays that leave may be granted him to dispose of the tracts and lots of land aforesaid.

" Now, therefore, for the causes aforesaid, and for divers other good and sufficient reasons, the court thereunto moving, they do hereby authorize and empower you, the said administrator, to dispose of all the right, title and interest of the deceased in and to the above-described tracts and lots of land in such manner as will best serve the interest of all concerned in said estate, requiring of you a due observance of the statute in such case made and provided.

" WITNESS, JAMES PORLIER, Chief Justice of the county court of the county of Brown, at the township of Green Bay, on the 28th day of March, A. D. 1826.

                         "ROBERT IRVIN, JR., *Clerk. B. C.*"

The same objections were made to this deed and the said license as were made to the order of the county court of January 10, 1826, and it was further objected that no title appeared to be in *Pierre Grignon* at the time of his death, and that the sale was not advertised according to law.

The recitals of the patent showed that the land in question was confirmed to *Pierre Grignon* by act of congress

of February 21, 1823, which was prior to his death, but the patent was not issued until after the administrator's sale — it was dated December 1, 1829.

The court overruled the objections and admitted the deed and license in evidence. The defendants then gave in evidence a deed from Augustin Grignon to John Jacob Astor, Ramsey Crooks and Robert Stuart, for the same premises, dated November 5, 1834, and also a deed of the same lands from Astor, Crooks and Stuart, to the defendant Linus Thompson, dated January 8, 1836.

The instructions which were given to the jury as well as those asked by the plaintiffs are fully stated in the opinion of the court. Verdict and judgment for the defendants, to reverse which the plaintiffs sued out a writ of error, and assigned the following points for error:

1. That the said district court admitted the minutes of the county court of Brown county, not under seal, as evidence of a judgment, or order of the court, in the absence of any record of such order, or of its loss or destruction.

2. That the said district court admitted the said minutes of the county court as evidence, they not appearing on their face or otherwise, to present a case of which the county court had jurisdiction, or which had been brought before that court in accordance with the several provisions of the act of the Territory of Michigan, entitled "An act directing the settlement of the estates of persons deceased, and for the conveyance of real estate in certain cases;" adopted July 27, 1818.

3. That the said district court admitted the said minutes without evidence on their face or otherwise, that the order entered therein involved the title or had reference to the lands now in dispute.

4. That the said district court admitted the license issued by the clerk of the county court, and the several deeds offered by the defendants as evidence, and directed the jury that they were conclusive to vest the title to the premises in question, in the defendants.

5. That the said district court decided that Pierre Grignon, at the time of his death, was seized in fee of the premises in question.

6. That the said district court admitted a notification of the sale of the premises in question, purporting to be signed by the administrator on the estate of Pierre Grignon, and printed in a paper purporting to be a newspaper, to be read in evidence, without further proof than its production in court.

7. That the said district court presumed all the facts necessary to give the county court jurisdiction to make an order of sale, and presumed all the facts necessary to show that such order was made in reference to the lands in question, and all the facts to show that the proceedings of the administrator before and at the sale, were regular and in accordance with the act of Michigan hereinbefore referred to, and that the said court directed the jury that upon the facts and the law of the case, the title to the lands in question was vested in the defendants by the administrator's sale.

8. That the said district court directed the jury upon points of evidence, and particularly one point, to wit: the posting a notification of sale by an administrator, which it was the peculiar province of the jury to determine.

9. That the said district court refused to give the jury the instructions requested by the lessors of the plaintiff.

10. That the said district court did not properly direct the jury in regard to the 6th, 7th, 8th and 10th instructions requested by the lessors of the plaintiff.

*Morgan L. Martin*, for plaintiffs in error.

1. The patent dated Dec. 21, 1829, to *Pierre Grignon and his heirs*, inured to the benefit of *the heirs* and those claiming under them. 4 Pet. 345; 6 id. 261; 12 id. 208; Act of Congress, May 20, 1836.

2. The *claim* of Pierre Grignon was a mere personal right, dependent on the favor of the government, and gave him, at most, an equity. The *donation* imposed no

obligation on the donor. 2 Johns. 52; 3 Black. Com. 441; 2 Str. 955.

3. This claim, being but an equity, was not subject to sale by the administrator to pay debts. 5 Mass. 240; 3 Johns. Ch. 156; 1 id. 52; 17 Johns. 351; 4 id. 41; 3 Call, 277; 7 Wheat. 6; 1 Ohio, 144.

4. There is no evidence of an order of sale having been made. 7 Cr. 408, 412; 2 Stark. 473, 151; 2 D. & R. 237; 2 B. & C. 45; 2 Mass. 606; 1 Tenn. 94; 5 Ohio, 447; 1 Esp. 44; 1 W. Black. 664; 1 Salk. 329; 1 Raym. 243; 11 East, 441; Stark. on Ev., title "Record."

5. Admitting the minutes offered in this case as evidence, and that the land was real estate subject to debts, still the proceedings of the county court are a nullity. 2 Wil. 382; 6 Mod. 224; 9 id. 95; Hawk. 94; 4 Burr. 2244, 2281; 1 id. 148; 1 Esp. 178; Cowp. 26, 29; Plowd. 390; 3 Co. Inst. 231; 12 Mod. 355; 1 Lev. 160; 2 Black. 1145; 8 Tenn. 424; 7 T. R. 359; 11 Johns. 175; 15 id. 244; 3 Cr. 331; id. 337; 5 id. 173; id. 184; 19 Johns. 39; 1 Litt. 118; 2 Dana, 270; 3 Marsh, 62; 2 Leigh, 719; Peter's Cir. Ct. 36; 2 Cr. 97; id. 128; 1 Pet. 340; 2 id. 169; 10 Co. 76; 16 Mass. 180; 5 Pick. 145; 2 T. R. 644; 2 Mod. 308; 5 Mass. 242.

6. Nor do the proceedings furnish sufficient evidence that the county court intended to include the estate claimed in this suit. Dyer, 208; Carth. 453; 1 Barn. & Ald. 40.

7. The sale of the administrator was void for want of notice. 3 Mass. 399; 10 id. 105; 11 id. 227; 7 id. 488; 4 Binn. 104; 6 id. 483; 5 Pick. 144; 1 Ohio, 473; 4 Wheat. 77–79.

8. The deed of the administrator conveys no title subsequently acquired. 1 Salk. 237; Powel on Dev. 191; Doug. 718 (note); 1 T. R. 435; 6 Mass. 149; 8 id. 162; id. 201.

*H. N. Wells*, for defendants in error.*

---

*The reporter has not been furnished with the points made and authorities cited by counsel for the defendants in error.

DUNN, C. J. By an act of congress, entitled "An act to continue in force certain acts for the adjustment of land claims in the Territory of Michigan," approved February 21, 1823, claims to certain lands therein referred to were confirmed. The acts referred to are an act of congress entitled "An act regulating grants of land in the Territory of Michigan," approved March 3, 1807 ; an act approved April 23, 1812, entitled "An act to authorize the granting of patents to land according to the surveys that have been made, and to grant donation rights to certain claimants of land in the district of Detroit," etc. ; also, an act entitled "An act to revive the powers of the commissioners for ascertaining and deciding on claims to land in the district of Detroit, and for settling the claims to land at Green Bay and Prairie du Chien, in the Territory of Michigan," approved May 11, 1820. Land was granted, under these acts, to every person or persons in the actual possession, occupancy and improvement of the same in his, her or their own right, etc. By the third section of the said act of congress, approved February 21, 1823, the land, of which the lot in question is a part, was confirmed to the said *Pierre Grignon*, as appears by the recital in the patent. Said third section is as follows : "That patents shall and they are hereby directed to be issued in the mode pointed out by law in other cases, to persons whose claims to land, town or village lots have been regularly filed with the commissioners appointed by an act entitled 'An act to revive the powers of the commissioners for ascertaining and deciding on claims to land in the district of Detroit, and for settling the claims to lands at Green Bay and Prairie du Chien, in the Territory of Michigan, passed on the eleventh day of May, one thousand eight hundred and twenty,' and whose claims are contained in the report transmitted to the secretary of the treasury, and which have been reported favorably on by said commissioners, and such persons are hereby confirmed in their claims," etc.

*Pierre Grignon* died the 4th day of March, 1823; *Robert Grignon*, one of the plaintiffs, was at that time about twenty years of age, and *Peter B. Grignon*, another of the plaintiffs, was about eighteen years of age. They claim the premises in dispute as sons and heirs at law of said *Pierre Grignon*, and also by virtue of deeds of assignment and conveyance from sundry brothers and sisters of said *Pierre*. *Morgan L. Martin*, the other plaintiff, claims an undivided interest in the same by virtue of a deed from said *Robert.* and *Peter*. A patent from the United States to *Pierre Grignon*, dated December 21, 1829, for the tract of land of which this is a part, referring to the aforesaid act of confirmation, was read by said plaintiffs. In addition to this, much evidence on the subject of the marriage of said *Pierre* and the legitimacy of his children, the said plaintiffs, was given, which is not necessary to be noticed at this time.

The defendants gave in evidence the record of letters of administration on the estate of said *Pierre Grignon*, deceased, granted by John Law, judge of probate, to Paul Grignon, on the 21st day of June, 1824; and also the record of the official bond given by said administrator, approved and filed by said judge of probate on the same day.

The defendants then offered in evidence the following, contained in a book purporting to be minutes of the proceedings of the county court of Brown county. Mr. Childs, the clerk of the district court, having been examined thereto, stated, that he received this book purporting to be the records of the county court of Brown county. The said county court having been abolished, and the records and papers of said court passed into the hands of the clerk of the district court of said county.

"At a session of the county court for the county of Brown, begun and held at the township of Green Bay, in the school-house, on Tuesday, the tenth day of January, one thousand eight hundred and twenty-six; present, the Hon. JAMES PORLIER, Chief, and JOHN LAW, Esq.,

Associate Justice.   The court was opened by Geo. Johnston, sheriff.

"The petition of Paul Grignon, administrator of the estate of *Pierre Grignon*, late of the county of Brown, deceased, was filed by his attorney, H. S. Baird, praying for an order from the court to authorize him to dispose of the real estate of said *Pierre*. In consideration of the facts alleged in said petition, and for divers other good and sufficient reasons, it is ordered that he be empowered as aforesaid.   Minutes read, corrected and signed, by order of the court.

"ROBERT IRWIN, JR., *Clerk.*"

The reading of which in evidence was objected to by plaintiffs, and admitted by the court.

The defendants next offered in evidence a bond and oath of said administrator, to make sale of said real estate according to the statute, dated and filed with the judge of probate, April 20, 1826 ; which was also objected to by plaintiffs, and admitted by the court.

The defendants next offered, and were allowed, to prove by H. S. Baird, Esq. (plaintiffs objecting thereto), that a notice of sale of said premises by said administrator was contained in a newspaper called the "Michigan Herald," in seven weekly numbers, commencing on the 16th day of March, 1826, and ending on the 26th day of April, in the same year, and a copy of said newspaper for each week containing said notice was produced and read. Witness was further allowed to state as follows : "I cannot state that I put up any notices of sale, but that I drew the notices I am positive.   I think I drew five copies of the notice which has been read from the newspaper.   I cannot say they were put up in the township.   There was at that time but one township in the county. "

John P. Arndt, Esq., another witness, testified that he saw a notice of sale of lands of *Pierre Grignon*, deceased, posted up in the township, and thinks it was at his house at Green Bay, in the fore part of the year 1826. All of which was objected to by plaintiffs.

The defendants next offered in evidence a license issued by the clerk of the county court of Brown county, under the seal of said court, directed to Paul Grignon, administrator of the estate of said *Pierre Grignon*, deceased, for the sale of said lands, issued in pursuance of said order of the county court, held on the 10th day of January, 1826, before the aforesaid judges, and reciting that Paul Grignon, administrator of all and singular the goods and chattels, rights and credits, lands and tenements of *Pierre Grignon*, deceased, represents to the court, etc., that the said *Pierre* died intestate, at Green Bay, in the county of Brown, on the 4th day of March, 1823 ; that at the time of his death the said *Pierre* was seized in his demesne as of fee in and to the following tracts or lots of land at Green Bay aforesaid, to wit : Lot number three, on the east side of Fox river, bounded north by land claimed by the estate of Domitille Languivin, south by Augustin Grignon, and four and one-half *arpents* in front, and eighty *arpents* rear (containing the land in dispute, together with other lands therein described).   And that it had been ascertained by said petitioner, that the goods and chattels belonging to the estate of said deceased are insufficient to pay all the just debts which he owed at the time of his death, but that the estate will be insolvent, and therefore prays leave may be granted him to dispose of the tracts and lots of land aforesaid.   Now, therefore, for the cause aforesaid, and for divers other good and sufficient reasons, the court thereunto moving, they do hereby authorize and empower the said administrator to dispose of all the right, title and interest of the deceased in and to the above described tracts and lots of land in such manner as will best serve the interest of all concerned in said estate, requiring of the said administrator a due observance of the statute in such case made and provided; bearing date the 28th day of March, 1826, and attested in the name of JAMES PORLIER, Chief Justice of the county court of the county of Brown, and signed by Robert Irwin, Jr., clerk.   Also

a deed from Paul Grignon, as administrator of the estate of *Pierre Grignon*, deceased, to Augustin Grignon, dated on the 13th day of June, 1826, and recorded, for land containing the land in dispute, was offered in connection with said license, the said deed having been made in pursuance of the sale made thereon ; which was objected to by the plaintiffs, and admitted by the court, the said court giving its reasons therefor at length, which need not be repeated here.

Defendants then gave in evidence a deed from Augustin Grignon to John Jacob Astor and others, conveying the premises in question, dated November 5, 1834, and recorded, and followed that by a conveyance from said Astor and others to *Linus Thompson*, one of the defendants, for the lot in question, bearing date January 8, 1836.

It is unnecessary to notice the different reasons of the plaintiff's counsel for objecting to the testimony on the part of the defendants, as they are embraced in the points put to the court and in the errors assigned.

The counsel for the lessors of the plaintiff requested the court to give to the jury the following instructions, and the jury were instructed by the court thereon, as follows :

1. That, if the jury believe from the evidence that the lessors of the plaintiff are heirs at law of *Pierre Grignon*, deceased, or have shown a regular conveyance from the heirs at law to themselves of the premises in question, before the commencement of this suit, then the defendants can claim no title under the sale of the premises in question, made by Paul Grignon as administrator of the estate of *Pierre Grignon*, deceased, by virtue of the order made by the county court of Brown county, on the 10th day of January, 1826, unless the jury are satisfied that the representation made by the administrator to the said court, to obtain the order or license of the said court for the sale of the said premises, was accompanied with a certificate from the judge of probate

of the county where said deceased person's estate was inventoried, certifying the value of the real estate of said deceased person, and the amount of his just debts, and also his opinion whether it be necessary that the whole be sold, and, if a part only, what part, as directed by the third section of the act entitled "An act directing the settlement of estates of persons deceased, and for the conveyance of real estate in certain cases," as adopted by the governor and judges of the Territory of Michigan, on the 27th day of July, 1818.

2. That the said order or license of the said county court for the said sale, unless the said court had been furnished with the said certificate of the judge of probate, is null and void as against the heirs at law of *Pierre Grignon*, who have not acquiesced in the said sale, made by the administrator, under and by virtue of said order.

To the said two points the court answered as follows: As the county court had jurisdiction of this subject, we are to infer that these things were shown to said court.

3. That the said county court had no power or jurisdiction to make the said order of sale, without the said certificate of the said judge of probate.

To which the judge answered that the certificate of the judge of probate was not necessary to give the court jurisdiction ; it was required as evidence.

4. It must appear affirmatively to the jury that the said county court, at the time of making the said order for sale of said premises, had before them the said certificate of the said judge of probate, at the time of making the said order or granting the said license for the sale of the premises in question, or the said order of sale is void as against the heirs at law of *Pierre Grignon*, deceased, who had not acquiesced in the sale, and those claiming under them.

To which the court answered, that the judgment of the county court, having jurisdiction, is conclusive on this point.

5. Unless it appears affirmatively to the jury that the said county court, previous to its passing on the said representation for the sale of said premises, ordered due notice to all parties concerned, or their guardians, who did not signify their assent to such sale, to show cause, at such time and place as the court appointed, why such license should not be granted, agreeably to the provisions of the said third section of said act in the first instruction referred to, that then the said order, or license, for sale was void as against the heirs of *Pierre Grignon*, deceased, who have not acquiesced in such sale, and the defendants can acquire no title by virtue of the sale made by the administrator under the said order, as against the heirs at law of the said *Pierre Grignon*, deceased.

To which the court answered, that the county court having jurisdiction of this subject its judgment is conclusive.

6. Unless the jury believe, from the evidence, that the said administrator, before the sale of the premises, gave thirty days' public notice, by posting up notifications of such sale in the township where the lands lie, as well as where the said deceased last dwelt, and in the two next adjoining townships, or caused the printing of such notification for three successive weeks, in such gazette or newspaper as the court which authorized the sale ordered and directed, the sale was void as against the heirs of said deceased and those claiming under them.

To which the court instructed the jury : This is a fact for the jury, and you must find that the advertisement substantially complied with the law, or the sale is void.

7. That it must appear affirmatively that the administrator, before making sale of said premises, did, literally and strictly, comply with the provisions of said statute, in relation to posting up or publishing the said notice of sale, or the said sale was void as against the heirs of *Pierre Grignon*, who have not acquiesced in the same.

To which the court directed the jury : That a substan-

tial compliance with the requisites of the law on this sub-
ject is sufficient.

8. If the jury believe, from the evidence, that *Peter B.
Grignon*, one of the lessors of the plaintiff, is one of the
heirs at law of said deceased, and was a minor at the
time of making the said order of sale, and at the time of
said sale, a guardian should have been appointed to rep-
resent him, according to law, and if no such guardian
was appointed, the said sale was void as to him and those
claiming under him.

To which the court answered : It was necessary and
proper that if a minor, he should be notified by guardian,
but in this issue the presumption is that he was.   This is
a fact that he might controvert on an appeal.

9. Unless the defendants in this case have proven
affirmatively to the jury, that the administrator of the
deceased strictly complied with all the provisions of said
statute, in obtaining the order for sale, and in making
the said sale, that the defendants in this suit can acquire
no title to the premises in question, under said sale, as
against the lessors of the plaintiff, if the jury believe,
from the evidence, that the lessors of the plaintiff are the
heirs at law of said *Pierre Grignon*, deceased, or derived
title from the heirs at law.

To which the court responded to the jury : The court
charge the jury that they are bound to consider in this
collateral issue that the  judgment or order of the county
court of Brown county, ordering the sale, was made
upon sufficient and proper evidence, and that it had
every thing requisite before it to authorize it to make the
order for the sale,  and that the judgment of that court is
conclusive, until reversed.

The statute in force provided that, when the goods and
chattels belonging to the estate of any deceased person
shall not be sufficient to answer his just debts, upon
representation thereof, and the same being made to
appear to the supreme judicial court, or to the county
court in the county where the deceased person last dwelt,

or in the county in which the said real estate lies, the said court is authorized to empower and license the executor or administrator of such estate to make sale of all or any part of the houses, lands or tenements of the deceased, so far as shall be necessary to satisfy the just debts which the deceased owed at the time of his death ; and every such executor or administrator, being so licensed and authorized as aforesaid, shall and may, by virtue of such authority, make, sign and execute, in due form of law, deeds and conveyances for such houses, lands and tenements which they shall so sell; which instrument shall make as good a title to the purchaser, his heirs and assigns forever, as the testator or intestate, being of full age, of sound mind and memory, in his lifetime, might or could have given for a valuable consideration : *Provided*, that the executor or administrator, before sale be made as aforesaid, give thirty days' public notice, by posting up notifications of such sale in the township where the lands lie, as well as where the deceased person last dwelt, and in the two next adjoining townships, and also in the county town of the county, and whoever will give most shall have the preference in such sale.

When it shall be necessary that he should be empowered to sell some part of the real estate for the payment of debts, and that the same shall be represented and made to appear to either of the aforesaid courts on petition and declaration filed and duly proved therein by the said executors or administrators, the said courts respectively may authorize and empower such executor or administrator to sell and convey the whole, or so much of the real estate as shall be most to the interest and benefit of the parties concerned therein, etc. The said executors or administrators shall first give bonds with sufficient sureties to the judge of probate, for the county where the deceased testator or intestate last dwelt and his estate was inventoried, that he will observe the rules and directions of law for the sale of real estate by executors and administrators.

The third section of the said statute requires that every representation to be made as aforesaid shall be accompanied with a certificate of the judge of probate of the county where the deceased person's estate was inventoried, certifying the value of the real estate and of the personal estate of such deceased person, and the amount of his just debts, and also his opinion whether it be necessary that the whole or a part of the estate should be sold; or, if a part only, what part. And the said courts, previous to their passing on such representation, shall order due notice to be given to all parties concerned, or their guardians, who do not signify their assent to such sale, to show cause, at such time and place as they shall appoint, why such license should not be granted, etc.

The questions to be decided by this court may be reduced to the following:

1. Had *Pierre Grignon*, at the time of his death, such an interest in the lands in controversy as was the subject of sale by his administrator for the payment of his just debts?

2. Had the county court of Brown county jurisdiction of the subject-matter so far as to order the sale of a decedent's lands for the payment of debts? If so, should the sale made in this case be disturbed in this collateral suit, if it does not appear that all the facts and evidence required by the statute were laid before the county court; that previous notice to all concerned had been given, and that the record of the court had been made up as directed by statute?

3. Did the court err in its instructions and charge to the jury?

4. Should the plaintiffs recover by virtue of the patent to *Pierre Grignon?*

The patent sets forth that the tract of land, of which the lot of land in dispute is part, was confirmed to *Pierre Grignon* by the act of congress above referred to, on the 21st day of February, 1823, and the proof is that he died

on the 4th day of March after.   It is under this act of
confirmation that both parties claim.   The act of confir-
mation was founded on the *actual possession, occupancy
and improvements* of said lands by said *Pierre*.   The
words of the act are "that such persons are hereby con-
firmed in their claims, agreeably to any surveys hereto-
fore made, or the lines and boundaries established by the
claimants respectively ;" and directs "that patents shall
be issued in the mode pointed out by law in other cases,"
etc.   The license shows that the lines and boundaries
of the tract were established with sufficient certainty ; it
being there described as "lot number *three*, on the east
side of Fox river, bounded north by land claimed by
Domitille Languivin ; south by Augustin Grignon, and
four and one-half *arpents* in front, and eighty *arpents*.
in rear."   It may not be necessary to decide whether the
legal title to this land was vested in *Pierre Grignon*
before his death, as the statute of Michigan authorized
the sale of a decedent's *houses, lands and tenements*,
for the payment of his debts.   It is true, that in ordinary
cases the legal title remains in the government until
divested by patent ; but the act of confirmation vested in
Pierre Grignon, certainly, such title as by the general
terms of the statute referred to, could be sold and trans-
ferred, in pursuance of the statute, for the payment of
his debts.   By the act of confirmation, he became instantly
entitled to a patent, to be issued by the government as in
ordinary cases.   The land was, after the date of the act,
as much his against all the world, except *possibly* the
government, as if the patent had been issued.   No one
could dispute his claim, his possession, his grant, or the
confirmation thereof.   He could have mortgaged or sold
the land previous to his death for the payment of his
debts, and it would certainly be a singular construction
of his title under the confirmation and the statute men-
tioned, that his creditors could not effect a sale of the
same for that purpose after his death.

The statute of Michigan authorizes application to be made to the supreme judicial court, or to the county court in the county where the deceased person last dwelt, or in the county where the real estate lies, for a license to sell. It is apparent that this county court had jurisdiction of the subject matter. The deceased person last dwelt, and the real estate lay, in Brown county. The difficulty arises out of the imperfect record of' the proceedings of such court. It is not apparent that the records and papers produced show fully that all the prerequisites of the statutes were before the county court when the sale was ordered. All we have, is the short entry of proceedings above, copied from the record book, the license under seal, and the record of the bond and oath of the administrator. From these exhibits it appears that the sale was ordered for the payment of the debts of the decedent, of which matter the county court had jurisdiction. The plaintiffs allege that this sale is void against them, because the representation of the administrator to the court does not appear to be accompanied by a certificate of the judge of probate, certifying the value of the real estate, and of the personal estate of the deceased, and the amount of his debts, and his opinion, etc. ; and that the court did not, previous to passing upon said representation, order notice to be given to all persons concerned, and the guardian of the minors, who did not signify their assent to such sale, to show cause, etc. If the court had followed the directions of the statute then in force, in making up the record of its proceedings, and attested the same, it may be that their proceedings would now present a different aspect.

But the statute was only directory, for the purpose of preventing errors, and it would be against all precedent to declare all the proceedings of that court void because their records were not made out in proper form, examined and attested by the judge, more particularly, fourteen years after the proceedings took place, and after the court has gone out of existence and the property passed

into the hands of innocent purchasers.    If the certificate
of the judge of probate was indispensable to give the
county court jurisdiction, and the records of that court
do not show its presence or production in court,.then the
sale would be void.    But the statute requires that it
should be produced to the court, with the representation
of the administrator, to enable it to decree for the interest
of all concerned.    It might have been before the court,
although no mention is made of it.    All the heirs might
have appeared before the court and consented to the sale,
which would have dispensed with notice, although no
mention is made of it.    The proper court would set aside
the sale on appeal, if taken in time, if all the prerequi-
sites and conditions precedent to the order of sale had
not been complied with strictly by the administrator and
the county court; but, as the county court had jurisdic-
tion of the subject-matter, the presumption of law is that
all the necessary prerequisites and evidence had been
before that court, to authorize the granting the order and
license, and they are not now to be inquired into in this
collateral issue.    The orders, judgments and decrees of a
court of competent jurisdiction are not to be avoided in a
collateral issue.    2 Rawle, 206 ; 14 Serg. & Rawle, 173.    A
judgment of an inferior court, although erroneous, is not
void, if the court has jurisdiction.    5 Cranch, 173.    A
judgment or decree of a court of competent jurisdiction
is conclusive whenever the same matter is again brought
in controversy.    6 Wheat. 109.    A judgment of a court
of competent jurisdiction, while unreversed, concludes
the subject-matter of it as between the same parties. · 9
Pet. 8.    So long as a judgment remains in force, it is of
itself evidence of the right of the plaintiff to the thing
adjudged, and gives him a right to process to execute
the judgment.    The errors of a court, however apparent,
can be examined only by a court of appellate power, and
by the laws of every country, a time is limited for such
examination, whether in rendering judgment, issuing
execution, or enforcing it by process of sale and impris-

onment. No rule can be more reasonable than that the person who complains of an injury done him should avail himself of his legal rights in a limited time, and every act of a court of competent jurisdiction is presumed to have been rightly done. 10 Pet. 449. There is no difference between the conclusiveness of a judgment at law and the decree of a court of chancery. 6 Wheat. 109. The judgments of a court of competent jurisdiction, although obtained by fraud, have never been considered absolutely void, and therefore all acts done under them are valid, as far as third parties are affected. 3 Cranch, 300. The presumption is, that the judgment of a court of competent jurisdiction is proper. 13 Pet. 436. It is a general rule of our law that where any matter belongs to the jurisdiction of any court so peculiarly that other courts can only take cognizance of the same, subject incidentally and indirectly, the latter are bound by the sentence of the former and must give credit to it. The decree or order we are now considering is definite; it passes *in rem judicatem;* the thing is finally judged, but not without appeal. We are not reviewing an appeal from this order or decree, but as a court of error, the decision of the district court, which had not direct cognizance of it.

This case is similar to the case of *McPherson v. Cunliff*, 11 Serg. & Rawle, 426. Here it appears, by the license, to have been represented to the county court by the administrator, that the personal estate of the decedent was insufficient to pay all his just debts, but that the estate will be insolvent, when for the causes aforesaid, and for divers other good and sufficient reasons, the court thereunto moving, they authorize and empower the administrator to dispose of all the estate of the deceased in the lands therein mentioned. There is no mention made of, or reference to the certificate of the judge of probate, or whether the heirs appeared and consented to the sale, or that notice had been given to them. The law of Pennsylvania provides, "that no orphan's court shall

allow or order any intestate's land or tenements to be sold before the administrator requesting the same shall exhibit a true and perfect inventory, and conscionable appraisement of all the intestate's personal estate whatsoever; as also, a just and true account, upon his solemn oath, of all the intestate's debts which shall have then come to his knowledge." The case of *McPherson v. Cunliff*, 11 Serg. & Rawle, 426, was a suit brought by the legal heirs against the purchaser, and the sale was attempted to be set aside, because *no written statement of the debts was exhibited* under oath by the administrator, and was decided in favor of the defendant. This was a sale made in an old settled country, where the practice should be well settled; and the heirs assailed it twenty years after. The sale in this case was made in a new country shortly after the introduction of law, and before correct practice could have been settled; and the heirs now, after a lapse of some fourteen years, attempt to set aside the sale, on a collateral issue. Enough appears on the record and papers to show that the court had jurisdiction in both cases. In this case a sale was made under the order and license referred to, and a conveyance to the purchaser by the administrator in pursuance of the sale; the purchaser enters into possession of the premises, which he and his alienees enjoy, undisturbed, for fourteen years; and after an extraordinary rise in the value of the property, the court cannot encourage the claim of the heirs, more particulary, as the brothers and sisters were of full age, and the sons claiming under them, or as heirs, were about the age of twenty-one at the time of the sale. If such a purchaser is not protected, sales of this kind are only traps for honest men, particularly when we consider the loose manner in which all such business has been transacted in all courts vested with similar jurisdiction. Whenever these sales are called in question, we find the courts deciding that these irregularities must be overlooked; that, after a lapse of many years, all must be presumed to have been solemnly

transacted, and presumptions made in favor of what does not appear. 4 Binn. 105. The presumption·is always that the proceedings are regular, on account of purchasers, who are not to be affected by the unskillfulness or negligence of the proper officers. 6 Binn. 496. A substantial compliance with the statute is sufficient. If it appear to the court that the debts cannot be paid but by a sale of the land, and they are fully satisfied on these points; their jurisdiction has attached. 11 Serg. & Rawle, 432. If the purchasers were responsible for the mistake of a court in point of fact, or the loss of a paper, or the neglect of an officer, all judicial sales would be at an end; no prudent man would run the risk. In Massachusetts, under a law similar to the statute of Michigan, a title under a sale by an administrator, by virtue of a license from the court of common pleas, was holden good against the heirs of the intestate, although the license was granted upon a certificate from the judge of probate, not authorized by the circumstances of the case, and the administrator had never filed the original oath. 11 Mass. 226. The purchaser was not bound to look further back than the order of the court. It was said the license was granted by a court having competent jurisdiction of the subject. If the jurisdiction was improvidently exercised, it is not to be corrected at the expense of the purchaser, who had a right to rely on the order of the court, as an authority emanating from a competent jurisdiction. It would be tedious to refer to all the decisions on the subject.

The case ·of *Thompson v. Tolmie*, 2 Pet. 157, refers to the above cases in 11 Serg. & Rawle, and in 11 Mass. See also 4 Cranch. 328 ; 4 Wheat. 506 ; 1 Pet. 340 ; 5 id. 370 ; 6 id. 729 ; 1 Yates, 118 ; 2 Serg. & Rawle, 377 ; 2 Cranch, 458 ; 2 Ch. Rep. 405 ; 3 Serg. & Rawle, 234. Sale held good where it was made by one administrator while there were two in office. 7 Serg. & Rawle, 166. In 1 Conn. 7, TRUMBULL, J., says : "A judgment, decree or sentence, or order, passed by a competent jurisdiction, which

creates or changes a title, or any interest, or estate, real or personal, or which settles and determines a contesteb right, or fixes a duty on one of the parties litigant, is not only final as to the parties themselves and all claiming under them, but furnishes conclusive evidence to all mankind that the right, interest or duty belongs to the party in whom the court adjudged it." 1 Nott & McC. (S. C.) 329 ; 13 Mass. 162 ; 6 Johns. Ch. 387 ; Chancellor KENT refers to 7 Wheat. 60.

The only charge of the district court appears in the answers annexed to the different points presented on behalf of the lessors of the plaintiff. These answers on points of law appear, in the main, to correspond with the doctrines above advanced on the conclusiveness of the order and license of the county court, and the presumptions that should be raised in favor of the purchaser to quiet titles. The point respecting the advertisement of the sale by the administrator was properly left to the jury as a matter of fact, with instructions that a substantial compliance with the statute was sufficient. There was but one township in the county of Brown, and consequently it was impossible for the administrator to comply, literally, with the requisites of the statute in that particular. It could not be expected that a purchaser, after such a lapse of time, should have the duty imposed on him of proving that advertisements were properly put up. It cannot be that the title of a fair purchaser should depend on such perishable testimony. If it were so, heirs would gain in all instances, by procrastinating their suit until witnesses should die, or be removed beyond the reach of the purchaser.

The question, should the lessors of the plaintiff recover by virtue of the patent to *Pierre Grignon?* remains to be considered. It will be borne in mind that this land was confirmed to *Pierre Grignon* by act of congress, on the 21st day of February, 1823, and that by the same act a patent was directed to be issued to him for the same in the usual manner ; and that he died on the 4th day of

March, in the same year. It also appears that this land was sold by the administrator of said *Pierre*, in pursuance of a license issued by a court of competent jurisdiction, in the year 1826, and a deed made by said administrator for the same to Augustin Grignon, the purchaser at said sale. This deed was made by virtue of the authority contained in the statute of Michigan above referred to. An act of congress entitled "An act to give effect to patents for public lands issued in the name of deceased persons," approved May 20, 1836, provides that "in all cases where patents for public lands have been or may hereafter be issued, in pursuance of any law of the United States, to a person who had died or who may hereafter die, before the date of such patent, the title to the land designated therein shall inure to, and become vested in the heirs, devisees or assigns of such deceased patentee, as if the patent had issued to the deceased person during life." Although this patent was issued in 1829, yet, if *Pierre Grignon* had sold this land in his lifetime, after its confirmation to him by congress, under this act of congress, the patent would inure to the benefit of his vendee. By the act of Michigan, the administrator was authorized to convey the same title that *Pierre Grignon* had and held in his life-time, or could have conveyed, if living in 1826. We must give effect to these acts, and consider the alienee of the legal representative of *Pierre Grignon*, under this act, the same as if he were the alienee of said *Pierre Grignon* himself, and entitled to the same rights and title. In either case the alienee might have obtained this patent from the land office, on producing his deed or assignment of the land. This patent, therefore, although issued in 1829, to *Pierre Grignon*, cannot give his heirs any right or title to the land, to enable them to recover the possession of the premises of a purchaser of the same, from the administrator of said *Pierre*, but it must inure to his benefit and those claiming under him.

Jackson vs. Astor and others.

It is the opinion of this court that the decisions of the district court on the various points submitted and the judgment on the verdict of the jury be affirmed, with costs in favor of the defendants.

NOTE.—The cause was removed to the supreme court of the United States by writ of error, and was argued by Mr. Choate for the plaintiff in error, and Messrs Lord and Crittenden for the defendants in error in 1844, where the judgment of the supreme court of Wisconsin was affirmed. *Grignon's Lessee v. Astor et al.*, 2 How. 319; and the more important propositions discussed in the opinions delivered in this case were recently re-affirmed in *Comstock v. Crawford*, 3 Wall. 396.

The case of *Grignon's Lessee v. Astor* has became, and been for many years, a leading case in the State and Federal courts upon the effect which is to be given to sales of real estate by administrators and guardians under decrees of probate and county courts, and it has been thought material to report the facts of the case more fully than heretofore. That portion of the opinion which gives a statement and history of the case was prepared by Judge MILLER, before whom the cause was tried in the district court.

The county court of Brown county, it will be seen, was a court of *general* but not *unlimited* jurisdiction, and was organized under the statute of Michigan of 1820, and it was provided by section 7 of that act, " that a court shall be established in every county of this Territory to consist of one chief justice and two associate justices, any two of whom shall form a quorum ; and the said court shall have original jurisdiction in *all civil cases* where the sum demanded or matter in dispute is not within the jurisdiction of a justice of the peace and does not exceed the sum of $1,000; and appellate jurisdiction from any judgment or decision rendered or given by justices of the peace, in their respective counties, in cases authorized by law ; and furthermore that the said courts shall have cognizance of all crimes and offenses, the punishment whereof is not capital, concurrent with the supreme court, and shall have the same power to issue remedial or other process (writs of error and mandamus excepted) as the supreme court have. And either of the justices of said court in vacation shall, on good cause shown, have power to allow writs of *supersedeas* and also to grant writs of *habeas corpus ad subjiciendum.*" Other sections of the same act provided for the appointment of clerks of the county courts, and that a seal should be used by such courts, etc., and contained sundry provisions, regulating practice in the supreme and several county courts. Laws of Mich. 1820, 313–327.

By the act of 1818, Laws of Michigan 1820, 17, probate courts were established, but a sale of the real estate of any person deceased could be had only in the cases and in the manner pointed out by the act of 1818 (Laws of Michigan 1820, 37) ; and application for an order of sale was required to be made to the supreme court or to the county court in the county where the deceased person last dwelt.

The probate court had no power in any case to order a sale of the real estate of the deceased. In many of the States the power of ordering such sales is vested in the probate court, as was the case during the territorial existence of Wisconsin; and after the State organization probate jurisdiction was conferred upon and vested in the several county courts of the State.

A considerable diversity of opinion has existed and found its way into the judicial decisions of the States, as to whether such probate and county courts are courts of inferior and limited jurisdiction, so that their acts and decrees can be supported only where their jurisdiction is affirmatively shown, and whether the presumptions which were allowed in support of the record of the county court of Brown county in the case of *Grignon's Lessee v. Astor*, by the Wisconsin court and the supreme court of the United States, can be indulged in to support their proceedings.

The recent case of *Comstock v. Crawford*, 3 Wall. 396, shows that the supreme court of the United States applies the rule it adopted in *Grignon's Lessee v. Astor* to the proceedings of all probate and county courts acting upon any subject of which by law they could have jurisdiction.

This question in this State has, in a great degree, lost its practical importance as by chapter 127, Laws of 1861, the proceedings of such courts are placed upon the same foundation as to the presumptions which are to be made in their favor, as the proceedings of courts of general jurisdiction. *Blodgett v. Hitt*, Sup. Ct. of Wis. June term, 1871.

Upon this question, see also *Sitzman v. Pacquette*, 13 Wis. 291; *Frederick v. Pacquette*, 19 id. 541; *Gibbs v. Shaw*, 17 id. 197; *Wanzer v. Howland*, 10 id. 8; *Rape v. Heaton*, 9 id. 328, and cases cited in these decisions.